IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN S. WISE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.2:04CV1005-F |
| | ) WO |
| CITY OF EUFAULA BOARD | ) |
| OF ZONING ADJUSTMENT and | ) |
| CITY OF EUFAULA, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION**

Plaintiff John S. Wise, proceeding *pro se*, brings this action against defendants City of Eufaula Board of Zoning Adjustment and the City of Eufaula alleging that defendants violated plaintiff's rights under the United States Constitution and the Constitution of the State of Alabama by denying plaintiff's application for a zoning variance.

Count One of the complaint, construed liberally, appears to assert an appeal to the Circuit Court of the decision of the board, pursuant to Ala. Code § 11-52-81.[1] In Count Two,

---

[1] This statute provides:

Any party aggrieved by any final judgment or decision of such board of zoning adjustment may within 15 days thereafter appeal therefrom to the circuit court by filing with such board a written notice of appeal specifying the judgment or decision from which the appeal is taken.  In case of such appeal such board shall cause a transcript of the proceedings in the action to be certified to the court to which the appeal is taken, and the action in such court shall be tried de novo.

Ala. Code § 11-52-81.  On defendants' Exhibit 1, after the order of the board denying the application, plaintiff has written, "I am filing an appeal for Sec 6.14 (Rear Dwelling Prohibited – ". (Defendant's Exhibit 1, p. 2).  It is not clear whether this sentence was written on the application as

plaintiff brings claims pursuant to 42 U.S.C. § 1983 and the Constitution of the State of Alabama. Plaintiff alleges that defendants' denial of his application: (1) constituted a taking without just compensation in violation of the Fifth Amendment of the United States Constitution; (2) was arbitrary and capricious, in violation of his rights under the due process clause of the Fourteenth Amendment; (3) violated his right to equal protection under the Fourteenth Amendment; and (4) deprived him of due process and equal protection rights guaranteed by the Constitution of the State of Alabama. Plaintiff seeks compensatory and punitive damages and injunctive relief. On October 19, 2004, defendants removed the action to this court from the Circuit Court of Barbour County, Alabama, pursuant to 28 U.S.C. § 1331. This matter is presently before the court on defendants' motion for summary judgment (Doc. # 6). Upon consideration of the motion, the court concludes that it is due to be granted as to plaintiff's federal constitutional claims, and that the court should decline to retain supplemental jurisdiction over plaintiff's state law claims.

## BACKGROUND[2]

---

submitted or was added after the board's decision. Since the notation references an "appeal," and since plaintiff commenced an action in the Circuit Court of Barbour County on August 18, 2004 – fifteen days after the board action denying his application – requesting that the court order that plaintiff's application for a variance be approved, the court construes Count One as an appeal to the circuit court as permitted by the statute. The court does not here decide that the appeal was perfected under state law, but only that the complaint includes an appeal from the decision of the board.

[2] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). The court considers any objections not raised to the use or admissibility of the evidence to be waived for purposes of this motion. Davis v. Howard, 561 F.2d 565, 570 (5th Cir. 1977).

Plaintiff is the owner of a lot located at 540 West Barbour Street, in a residential district in Eufaula, Alabama. (Cole aff. ¶ 4; Trombley aff. ¶ 3).  Plaintiff wishes to convert a small building on the lot to a residence. (Defendants' Exhibit 1, Application For Special Use Permit, ¶ 1).  The building measures 507 square feet and is behind a dwelling on the same lot. (Id., ¶¶ 1-2; Defendants' Exhibit 2, Staff Reviews).  Eufaula's zoning ordinance provides:

> 6.14 Rear Dwelling Prohibited
>
> No accessory structure or building in the rear of the principle [sic] building on the same lot may be used for residential purposes unless upon written approval of the Board of Adjustment. In Residential Districts there shall be only one main principal building per lot.

(Defendants' Exhibit 6, p. 53).

The zoning ordinance was adopted in 1986. (Trombley aff., ¶ 3).  After adoption of the ordinance, plaintiff applied for and received variances to convert secondary buildings into residences on two lots located at 323 Macon Street and 321 Highland Avenue in Eufaula. (Wise aff., ¶¶ 2-3). On July 14, 2004, plaintiff filed an application with the Eufaula Board of Zoning Adjustment for a special use permit to allow conversion of the building at 540 West Barbour Street to a "one bedroom efficiency or studio type house." (Cole aff., ¶ 2; Defendants' Exhibit 1, ¶ 1).  Tim Milner, the city planner, is responsible for conducting a "staff review" of all applications for special use permits.  He conducted a review of plaintiff's application on July 27, 2004 and submitted a written report to the Board of Zoning Adjustment.  (Milner aff.)  Milner recommended that plaintiff's application be denied,

3

stating: "Side and rear setbacks of accessory building are inadequate for residential use. A staff review of professional literature indicates that rear-yard dwellings are more disruptive when the primary dwelling is not owner occupied." (Exhibit 2, ¶ 4). Plaintiff resides at 200 West Chewalla Creek Drive, not at 540 West Barbour Street. (Exhibit 1, p. 1).

Gloria Cole, the secretary for the board, sent a notice to area property owners advising them of plaintiff's application and the date and time of a board meeting, open to the public, at which the application would be considered. (Cole aff., ¶ 7; Exhibit 3). In a letter to the board dated July 28, 2004, James Peek, the owner of property at 517 West Barbour Street, objected to plaintiff's proposed use. Peek stated, in part:

> . . . I am against the request to convert the small storage building at 540 West Barbour to an Apartment.
>
> The building is not suitable to make into efficiency or any other type of living quarters. Mr. Wise is noted for doing very poor work on many of his projects and this will be no exception. Further more [sic] the lot is not big enough to house another person and automobile.

(Exhibit 4, Peek letter).

On August 3, 2004, the board held a public hearing on plaintiff's application. The board considered the application, Milner's staff review and Peek's letter. Ralph and Margaret Daigle of 507 West Barbour Street addressed the board and stated that they have no objections to plaintiff's request for a variance. Plaintiff presented pictures of work he has done to improve several dwellings, and stated that the building at issue had been used as an apartment in the past. After the hearing, the board voted unanimously to deny the

application. (Cole aff., ¶ 9; Exhibit 5, Board Minutes; Exhibit 1, p. 2, Order denying application, signed by board chairman). Plaintiff filed the present action on August 18, 2004. (See Complaint).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). For issues on which the non-movant bears the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ] – that is, point[ ] out to the district court – that there is an absence of evidence to support the non-moving party's case." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond

> the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

## "Takings Clause" Claim

Plaintiff alleges that defendants' refusal to grant his application for a zoning variance has deprived him of his "constitutional right to use and develop his property" without justification or just compensation. (Complaint, ¶ 16). This claim arises under the "takings clause" of the Fifth Amendment, as made applicable to the states by the Fourteenth Amendment.[3] Defendants have introduced evidence that plaintiff has not made a claim for compensation under Title 18 of the Code of Alabama (see Cole aff., ¶ 11), and they argue that plaintiff's Fifth Amendment "just compensation" claim is not ripe for review because plaintiff has not sought compensation through available state procedures. However, defense counsel does not direct the court to any provision within Title 18 providing an administrative avenue for obtaining compensation in a case of inverse condemnation, and the court has found no such provision. Title 18 is the Alabama Eminent Domain Code. See Ala. Code § 18-1A-1. The Alabama Supreme Court has previously rejected the contention that the provisions of Title 18 apply in an inverse condemnation action. See Alabama Department of Transportation v. Land Energy, Ltd., 886 So.2d 787 (Ala. 2004)(method of valuation set forth in Title 18 for partial taking of property acquired by eminent domain inapplicable in inverse condemnation proceeding); Ex Parte Neely, 653 So.2d 945 (Ala. 1995)(venue for

---

[3] "The Takings Clause of the Fifth Amendment provides: 'nor shall private property be taken for public use, without just compensation.'" Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610, 612 (11th Cir. 1997)(quoting U.S. Const. Amend. V).

7

inverse condemnation action determined by general venue provision for actions against state agencies and officers, not venue provision of the Alabama Eminent Domain Code).[4] Defendants have cited no provision in Alabama law providing an administrative remedy to an inverse condemnation claimant. Defendants' argument that plaintiff's claim is not ripe because he has not filed a claim for compensation pursuant to Title 18 of the Alabama Code is without merit.

However, as defendants argue, plaintiff cannot demonstrate that the denial of the requested zoning variance constitutes a "taking" of plaintiff's property as required to prove his Fifth Amendment claim. "The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests . . . , or denies an owner economically viable use of his land . . . ." Agins v. City of Tiburon, 447 U.S. 255, 260 (1980). In this case, plaintiff does not assert that the zoning ordinance or the particular provision at issue do not advance legitimate state interests. Rather, he contends

---

[4] In reaching its conclusion in Neely, the Alabama Supreme Court noted that " . . . there are distinct differences between formal condemnation proceedings and inverse condemnation proceedings" and quoted the commentary to Ala. Code § 18-1A-2. Neely, 653 So.2d at 946-47. That commentary states:

> This [Alabama Eminent Domain Code] does not purport to supply rules for inverse condemnation actions (except as provided in section 18-1A-32). The extent to which its provisions may be applicable in inverse condemnation actions is intended to be determined by judicial construction in the light of other applicable law.

Ala. Code § 18-1A-2, commentary. Section 18-1A-32 prohibits a condemnor from intentionally making it necessary for an owner to commence an inverse condemnation action and provides that any judgment or settlement in the owner's favor in such an action is to include the plaintiff's litigation expenses.

that the board's refusal to grant a variance in his particular case was "not based on a legitimate reason," was "without justification," and had "no substantial relation to public health, safety, morals or general welfare as required by law." (Complaint, ¶¶ 9, 15, 16). "'The law is well-settled that governmental bodies . . . 'have the right to set minimum standards for housing in residentially-zoned districts.' Municipalities may zone land to pursue any number of legitimate objectives related to the health, safety, morals or general welfare of the community.'" Georgia Manufactured Housing Association, Inc. v. Spalding County, Georgia, 148 F.3d 1304, 1309 (11th Cir. 1998)(quoting Scurlock v. Lynn Haven, 858 F.2d 1521, 1525 (11th Cir. 1988))(citations omitted).

Eufaula's zoning ordinance was enacted because the city council "deem[ed] it necessary for the purpose of promoting the health, safety, morals, and general welfare of the City," and in view of the planning commission's development of a comprehensive plan " . . . designed to lessen congestion in the streets, to secure safety from fire, panic, and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, [and] to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements . . . ." (Defendant's Exhibit 6, p. 1). Defendants have introduced evidence that the city planner recommended denial of plaintiff's requested variance because the "[s]ide and rear setbacks of [the] accessory building are inadequate for residential use," and "professional literature indicates that rear-yard dwellings are more disruptive when the

9

primary dwelling is not owner occupied." (Milner aff.; Defendants' Exhibit 2). In his response to the motion for summary judgment, plaintiff does not point to any evidence of record demonstrating the existence of a genuine issue of material fact regarding whether the zoning ordinance itself or the denial of plaintiff's request for a variance substantially advances the legitimate interests identified by defendants. Plaintiff's only evidence is his testimony that defendants have previously granted variances for conversion of secondary buildings to residences on two other parcels owned by plaintiff. (Wise aff.). This testimony, viewed in the light most favorable to plaintiff, is not sufficient to demonstrate that the denial of the requested variance in this particular instance did not advance a legitimate public interest.

Additionally, plaintiff has not pointed to any evidence demonstrating that the denial of his application "denies him economically viable use of his land." Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1072 (11th Cir. 1996). It is undisputed that there is another building on the property which is used as a dwelling. (Defendants' Exhibit 1, ¶ 1). Plaintiff has presented no evidence regarding the economic impact of defendants' regulation of plaintiff's property. "The standard is not whether the landowner has been denied those uses to which he wants to put his land; it is whether the landowner has been denied all or substantially all economically viable use of his land." Corn, 95 F.3d at 1072-73; see also Rymer v. Douglas County, 764 F.2d 796 (11th Cir. 1985)("[A]n otherwise valid exercise of the police power is not a taking simply because the regulation deprives the owner of the most

10

beneficial use of his or her property.")(citations omitted).  There is no evidence before the court which would permit the conclusion that plaintiff has been denied substantially all economically viable use of his land and, thus, defendants are entitled to summary judgment on plaintiff's Fifth Amendment "takings clause" claim.

### Substantive Due Process Claim

Plaintiff alleges that the board's decision in this case is "clearly arbitrary, capricious and unreasonable, having no substantial relation to public health, safety, morals, or general welfare as required by law," and "a wrongful exercise of the police power," and claims that defendants' action deprived him of his due process rights under the United States Constitution. (Complaint, ¶¶ 9, 10, 18).  The Eleventh Circuit refers to this type of claim as an "arbitrary and capricious due process" claim.  Eide v. Sarasota County, 908 F.2d 716, 721-22 (11th Cir. 1990).

To prove his § 1983 substantive due process claim, plaintiff must establish that: (1) "'there has been a deprivation of a federal constitutionally protected interest'" and (2) "'the deprivation . . . is the result of an abuse of governmental power sufficient to raise an ordinary tort to the statu[r]e of a constitutional violation.'"  Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir. 1989)(quoting Rymer v. Douglas County, 764 F.2d 796, 801 (11th Cir. 1985)).  "[A] deprivation of a property interest is of constitutional stature if it is undertaken '"for an improper motive and by means that were pretextual, arbitrary and capricious, and . . . without any rational basis."'  Greenbriar, 881 F.2d at 1577 (citations

omitted).  "The relevant question for consideration is whether there existed a rational basis for the City's rejection of [plaintiff's application], or, phrased in the alternative, whether the City's action bore no substantial relation to the general welfare."  Id.

The first step in determining whether the board's zoning decision survives rational basis scrutiny is "'identifying a legitimate government purpose – a goal – which the . . . government body *could* have been pursuing.'" Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1214 (11th Cir. 1995)(citation omitted).  In the present case, the city council identified legitimate purposes for its zoning ordinance – preventing the overcrowding of land and avoiding undue concentration of population – which the board could have been pursuing in rejecting plaintiff's application. (Defendants' Exhibit 6, p. 1).  Additionally, preventing the disruption caused by "rear-yard dwellings . . . when the primary dwelling is not owner occupied" (Defendants' Exhibit 2, p. 2) is a legitimate government purpose.

The second step of the rational basis analysis is to determine whether there is a conceivably rational basis  – not necessarily actually considered by the board – for the board to believe that its rejection of plaintiff's application would further the hypothetical legitimate government purpose identified in the first step. Restigouche, *supra*, 59 F.3d at 1214.  In the present case, the board had evidence before it that the building proposed for residential use had side and rear setbacks that were inadequate for residential use, that "rear-yard dwellings are more disruptive when the primary dwelling is not owner occupied," and that plaintiff's lot "is not big enough to house another person and automobile."  (Defendants' Exhibits 2,

12

4). This evidence, actually considered by the board, provides a basis for the board to conclude rationally that rejection of plaintiff's application for a zoning variance would further the legitimate governmental objectives of reducing disruption in the residential neighborhood and preventing overcrowding of land. Thus, defendants are entitled to summary judgment on plaintiff's substantive due process claim unless plaintiff can demonstrate that the board cannot possibly have relied on the legitimate purposes identified above. See Restigouche, 59 F.3d at 1214 (citing Haves v. City of Miami, 52 F.3d 918, 923 (11th Cir. 1995)).

There is evidence before the court that: (1) a rear accessory building on the adjoining lot at 542 West Barbour Street (also owned by plaintiff) is used as a residence (Trombley aff., ¶¶ 2-3); and (2) the board has previously approved plaintiff's requests for zoning variances to convert secondary buildings to residences on plaintiff's lots located at 323 Macon Street and 321 Highland Avenue (Wise aff.). Defendants have introduced evidence that the accessory building at 542 West Barbour Street is not subject to the zoning ordinance because it has been in continuous use as a residence since prior to the enactment of the ordinance and, thus, enjoys "grandfathered" status. (Trombley aff.; Defendants' Exhibit 6, Section 4.5). This evidence has not been controverted by plaintiff. There is no evidence of record providing any detailed information regarding plaintiff's previously approved applications for variances, such as lot size or location of the accessory building with respect to the lot lines or the primary building. Without such evidence, there is no basis on which a factfinder

13

could conclude that the board's decisions with regard to plaintiff's other applications are inconsistent with its decision in the present case. The evidence regarding uses of accessory buildings as residences – either grandfathered[5] or permitted – on plaintiff's other lots does not create an issue of fact regarding whether the board could rationally believe that its rejection of plaintiff's application for a variance in the present case furthered a legitimate governmental interest.[6] Accordingly, defendants are entitled to summary judgment on plaintiff's claim that denial of his application violated plaintiff's due process rights under the United States Constitution.

## Equal Protection Claim

Plaintiff contends that the board's denial of his application for a zoning variance violated his equal protection rights under the United States Constitution. (Complaint, ¶ 19). However, he makes no allegation that the board's decision was rendered on the basis of any suspect classification or that it burdens any fundamental rights. In the absence of such allegations, plaintiff's federal equal protection claim is analyzed by resort to the same rational basis inquiry used above with regard to his due process claim. Haves, *supra*, 52 F.3d at 921-23; Restigouche, 59 F.3d at 1214 n. 6 ("[T]he rational basis inquiry is the same for

---

[5] See Haves, *supra*, 52 F.3d at 922 ("The grandfathering of existing units . . . also serves a legitimate government purpose. . . A state may legitimately use grandfather provisions to protect property owners' reliance interests.")(citations omitted).

[6] In view of this conclusion, the court need not reach the first prong of the substantive due process analysis, *i.e.*, whether there has been a deprivation of a constitutionally protected interest. See Greenbriar, *supra*, 881 F.2d at 1577 ("In light of our disposition of this case on the basis of the second prong of this test, we need not address the first prong.").

equal protection and substantive due process challenges to zoning.")(citations omitted). For the reasons set forth above, defendants are entitled to summary judgment on plaintiff's federal equal protection claim.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment is GRANTED as to plaintiff's § 1983 claims. These claims will be DISMISSED by separate judgment.

It is further ORDERED that the court declines to exercise supplemental jurisdiction over plaintiff's claims alleging violations of his rights under the Constitution of the State of Alabama and his appeal, pursuant to Ala. Code § 11-52-81, of the decision of the Board of Zoning Adjustment.

Done, this 29th day of September, 2005.

                                            /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE